## HOLDEN v. TIDWELL.

No. 2700. Opinion Filed June 11, 1913.

(133 Pac. 54.)

1. LANDLORD AND TENANT—"Assignment" of Lease—Distinguished from Sublease. Where a lessee grants or transfers the whole term for which the premises were leased, leaving no reversionary interest in himself, the transfer being with the written consent of the owner, the assignee agreeing to comply in all respects with the terms of the original lease and to pay monthly rentals as originally agreed to be paid by the lessee direct to the owner, and the additional consideration for the transfer by monthly payments to the original lessee, held, to constitute an assignment and not a sublease.

2. SAME—Lease—Implied Covenant of Quiet Enjoyment—Effect. Though a lease of land implied a covenant of quiet enjoyment, yet that covenant is not designed as an indemnity against any and all disturbance of the lessee's enjoyment, but extends only to acts of the lessor or those deriving authority or title through him or from a paramount title.

3.  **PARTY WALLS—Definition—Right to Close Openings.** A party wall must ordinarily be construed to mean a solid wall, without windows or openings; and, in the absence of statutory regulation or express agreement between the parties, the right exists for either to close such openings or windows as may have been placed in said wall at a time when one of the lots was vacant.

4.  **LANDLORD AND TENANT—Eviction—What Constitutes.** An assignee of a lease, in which there is no covenant for 'quiet enjoyment, except that implied in law, is not evicted by the act of another owner erecting a building on the adjoining lot, and in the course of its construction closing the windows in a party wall so as to cut off the light and ventilation formerly enjoyed by the tenant.

5.  **SAME—**The mere building upon the adjoining lot, although it may have rendered the demised premises less suitable or valuable to the use intended, did not authorize the tenant, in the absence of a special covenant against interference with light and air, to claim an eviction and refuse the payment of rent.

6.  **SAME—Assignment of Lease—Action for Consideration—Defense.** The demised buildings having been remodeled to meet the requirement made necessary by the closing of the openings in the party wall, the assignee of a lease cannot, in an action to recover the consideration for the assignment, defend under section 1166, Comp. Laws 1909.

7.  **SAME—"Eviction."** Originally an eviction was understood to be a dispossession of the tenant by some act of his landlord or the failure of his title. Of later years it has come to include any wrongful act of the landlord which may result in an interference with the tenant's possession in whole or in part. The act may be one of omission as well as one of commission.

(Syllabus by Sharp, C.)

*Error from County Court, Oklahoma County;*
*F. B. Owen, Special Judge.*

Action by A. J. Tidwell against P. W. Holden. Judgment for plaintiff, and defendant brings error. Affirmed.

*Wylie Jones,* for plaintiff in error.
*O. C. Tarpenning,* for defendant in error.

Opinion by SHARP, C.   October 9, 1909, one L. A. Lewis, the owner of a certain three-story building situated at 314 West First street, Oklahoma City, leased the second and third floors thereof to the defendant in error for a term of two

years, beginning January 1, 1910, for the consideration of $2,400, to be paid in monthly installments of $100 each. On December 10, 1909, by written assignment the said defendant in error transferred his entire interest in and to said lease to the plaintiff in error. By the terms of the assignment the assignee covenanted and undertook the payment of the monthly rent to the owner of the premises during the full term of the lease. The owner's agents gave their written consent to the transfer, conditioned only that the assignee should in every respect comply with the terms of the original lease. Plaintiff in error was therefore the assignee of the lease and not a subtenant of the lessee. *Tyler Commercial College v. Stapleton,* 33 Okla. 305, 125 Pac. 443; Washburn on Real Property, secs. 677, 679; Tiffany on Landlord and Tenant, sec. 151; *Hogg v. Reynolds,* 61 Neb. 758, 86 N. W. 479, 87 Am. St. Rep. 522; *Stewart v. Long Island R. Co.,* 102 N. Y. 601, 8 N. E. 200, 55 Am. Rep. 844; *Craig v. Summers,* 47 Minn. 189, 49 N. W. 742, 15 L. R. A. 236. The language employed or form used by the parties in interest does not necessarily determine the character of the instrument or the relation created thereby. The fact that a transfer may be in form a sublease or that it reserves rights as against the transferee, similar to such as are ordinarily reserved in a lease, is, as a general rule, immaterial. Tiffany on Landlord and Tenant, sec. 151; Underhill on Landlord and Tenant, sec. 626.

After the first two months of occupancy of the premises, the transferee refused to pay further rent, claiming an eviction, or at least a constructive eviction, caused by the acts of the owner of the adjoining property closing the windows in the east wall of the demised premises. At the time the lease and assignment thereof were executed, the adjoining lot on the east, which belonged to a different owner, was vacant. The east wall of the leased premises was a party wall, belonging to the owners of the adjoining properties. Some time in February, 1910, the owner of the adjoining lot commenced the erection of a three-story building thereon, and in the course of its erection the

window openings, formerly in said east wall, were filled in, with brick and mortar, thereby making a solid wall between the two buildings. Did the mere building upon the adjoining lot, by which the demised premises were rendered less valuable to the use of the assignee of the lease, affect the right of the assignor to his rent, and was it sufficient to authorize the tenant to refuse the payment of further rent on the ground that it constituted a breach of an implied covenant of quiet enjoyment? The lease contained no express covenant for quiet enjoyment of the premises. This, however, was unnecessary, as according to the weight of authority, uninfluenced by statute, such a covenant will be implied. Tiffany on Landlord and Tenant, sec. 79; McAdam on Landlord and Tenant (4th Ed.) sec. 125; Washburn on Real Property, sec. 668, 668a. But whom does the implied covenant bind? The lessor or those in privity of estate with him, or does it extend to the owners of adjoining property? Obviously but the former. The owner of the adjoining vacant lot is not a party to the lease contract, hence is not bound by its terms.

In *Brown v. International Land Co.*, 29 Okla. 341, 116 Pac. 799, this court held that, to sustain an action for the breach of a covenant of quiet enjoyment in a lease, it is necessary for the plaintiff to show that he has been deprived from taking possession of the leased premises, or that his quiet enjoyment has been hindered or disturbed by the lessor or some person deriving their authority or title through him, or from a paramount title, but that hindrance or disturbance by a mere intruder is not sufficient. Authorities sustaining this decision might easily be multiplied. In order, therefore, for there to have been a breach of a covenant for quiet enjoyment, such as would release the defendant from his obligation to pay rent, it was necessary for him to show that he was evicted from the demised premises, either by the lessor or some one deriving their right or title through him, or one having a paramount title. The alleged eviction, however, consisted of the owner of the adjoining lot constructing a building thereon, in

the course of which the windows in the wall separating the two buildings were filled in, and in consequence of which the tenant was deprived of his former enjoyment of light and air accustomed to pass through said windows. These acts were done by the adjoining owner on his own property by virtue of a title to that property, and not on account of any right or dominion over the lessor's property.

The wall, it will be remembered, was a party wall. A party wall must ordinarily be construed to mean a solid wall. *Normille v. Gill*, 159 Mass. 427, 34 N. E. 543, 38 Am. St. Rep. 441, and cases cited; *Graves v. Smith*, 87 Ala. 450, 6 South. 308, 5 L. R. A. 298, 13 Am. St. Rep. 60; *Harber v. Evans*, 101 Mo. 661, 14 S. W. 750, 10 L. R. A. 41, 20 Am. St. Rep. 646; *Dauenhauer v. Devine*, 51 Tex. 480, 32 Am. Rep. 627; *Bloch v. Isham*, 28 Ind. 37, 92 Am. Dec. 287, and note. Each of the adjoining owners continued to own in severalty his own lot and the buildings thereon up to the division line; but each had an easement in the other's half of the wall, which entitled each to the use of the whole wall as a party wall. Freeman on Cotenancy and Partition, sec. 255; *Matts v. Hawkins*, 5 Taunt. 1 Eng. Com. L. 20; *Partridge v. Gilbert*, 15 N. Y. 601, 69 Am. Dec. 632; *Dauenhauser v. Devins, supra*. In other words, each proprietor owns his own half in severalty, with an easement of support for the other half of his neighbor's. *Graves v. Smith, supra; Bloch v. Isham, supra;* 2 Washburn on Real Property (5th Ed.) 286; Tiedeman on Real Property, sec. 450.

Originally an eviction was understood to be a dispossession of the tenant by some act of his landlord or the failure of his title. Of later years it has come to include any wrongful act of the landlord which may result in an interference with the tenant's possession in whole or in part. The act may be one of omission as well as one of commission. The rent is suspended by an eviction because it is plainly unjust that the landlord should be permitted to collect it, while by his own act he deprives the tenant of the possession which is the consideration for it. But the landlord is not responsible for the action of others

lawfully done on their own premises. He is liable only for his own acts and for such acts of others as it was his duty to protect his tenant from. *Oakford v. Nixon,* 177 Pac. 76, 35 Atl. 588, 34 L. R. A. 575. A similar question was before the Supreme Court of Ohio in *Hilliard v. New York & Cleveland Gas Coal Co.,* 41 Ohio St. 662, 52 Am. Rep. 99. There the lessee of a room in a block covenanted to keep the premises in good repair, but if the premises were destroyed the lease was to become void. A building was thereafterwards erected on an adjoining lot by third persons, whereby the demised premises were to a great extent cut off from light and ventilation and rendered damp and unhealthy, but were capable of being made tenantable by repairs. It was held that the lessee was not authorized to abandon the lease and refuse the payment of rent, either under the contract or under a statute providing that, where leased buildings shall be destroyed or be so injured by the elements as to be unfit for occupancy, the liability for rent shall cease. It was said in the opinion:

"If the lessors had conveyed to the lessee a right to the unobstructed enjoyment of light and air over the vacant lot, for and during its term, they would have been answerable for that right in case of disturbance. But there was no such grant. And the vacant lot not belonging to the lessors at the time of leasing, it cannot be urged with any force of reason that an easement by implication in the passage of light and air followed a demise of premises to the lessee."

In *Johnson v. Oppenheim,* 55 N. Y. 280, it was held that a mere building upon or other improvement of an adjoining lot, by which the demised premises were rendered less commodious of occupancy or less suitable to the use of a tenant, did not affect the right of the landlord to his rent or authorize the tenant to terminate the lease and abandon the premises. In *Hazlett v. Powell,* 30 Pa. 293, it was said by the court that where a lessor demised a building, in which were sundry windows opening on the ground of an adjoining owner, the erection by such adjoining owner of a building by which such windows

were closed up is not an eviction of the lessee or a defense to the payment of accruing rent.

In *Barns v. Wilson,* 116 Pa. 303, 9 Atl. 437, it was held that the removal of a party wall by an adjoining owner, under an act of the Legislature, even though the leased premises became uninhabitable by the tenant, does not constitute such an eviction under a paramount title as will relieve the tenant from the payment of rent. In the course of the opinion it was said:

"The act of the adjoining owner was a lawful act, performed in a lawful and proper manner, and the lessor took no part in the performance of it, indeed, was wholly powerless to prevent it. The loss of the rent must fall either on the lessor or the lessee, and as the latter is under a voluntary, express, and absolute promise to pay the rent, he ought to perform his agreement, when the lessor is in no default whatever."

It was said that the lessee might have protected himself by a special contract, but not having done so could not complain. See, also, *Parker v. Foote,* 19 Wend. (N. Y.) 309; *Myers v. Gemmel,* 10 Barb. (N. Y.) 537; *Palmer v. Wetmore,* 4 N. Y. Super. Ct. 316; *White v. Mealow,* 37 N. Y. Super. Ct. 72; *Brown v. Curran,* 53 How. Prac. (N. Y.) 303; *Conner v. Bernheimer,* 6 Daly (N. Y.) 295; *Ramsay v. Wilkie* [Com. Pl.] 13 N. Y. Supp. 554; *Manville v. Gay et al.,* 1 Wis. 250, 60 Am. Dec. 379. There being no eviction, there was no legal excuse for the nonpayment of rent. Defendant could have protected himself by a special covenant but did not see fit to do so. He, as well as his assignor or the owner, knew that the adjoining lot was vacant, and that at any time the owner might conclude to erect a building thereon, and that in doing so would obstruct the light and air.

It is finally contended that section 1166, Comp. Laws 1909, is conclusive of defendant's rights. Assuming the statute, fairly construed, to be applicable, we fail to see wherein it relieves the defendant of liability. It only provides for the termination of a contract of hire before the end of the term agreed upon, when the latter, within a reasonable time after request, fails to fulfill his obligations as to placing and securing the hirer in the

quiet possession of the thing hired or putting it in a good condition or repair. This was done by the owner, apparently to the satisfaction of the defendant, at least as nearly so as the changed condition would permit of. Concessions were made the assignee by the owner. The former continued the occupancy of the premises at a reduced rental and has not been relieved of his obligation to pay plaintiff the original consideration on account of the purchase of the lease.

    The judgment of the trial court should be affirmed.

    By the Court: It is so ordered.