## MULLEN v. BARNES.

No. 6949—Opinion Filed Jan. 2, 1917.

Rehearing Denied Jan. 30, 1917.

(162 Pac. 936.)

1. Landlord and Tenant—Actions for Breach of Covenant—Burden of Proof.

"To sustain an action for the breach of a covenant for quiet enjoyment in a lease, it is necessary for the plaintiff to show that he has been prevented from taking possession of the leased premises, or that his quiet enjoyment has been hindered or disturbed by the lessor, or some person deriving their right or title through him, or from a paramount title; a hindrance or disturbance by a mere intruder is not sufficient. 29 Okla. 341, 116 Pac. 799.

2. Landlord and Tenant—Actions—Dispossession—Damages.

"The true measure of damages where a lessee of agricultural lands is wrongfully dispossessed and thereby hindered from cultivating the land is the rental value of the land plus, the labor of breaking it or otherwise preparing it for the reception of the crop."

3. Same—Evidence—Sufficiency.

Evidence produced by plaintiff examined, and held not sufficient to establish a cause of action in favor of the plaintiff and against the defendant, and that the court erred in refusing to sustain a demurrer thereto.

(Syllabus by Hayson, C.)

Error from County Court, Love County; J. H. Hays, Judge.

Action by Will Barnes, by his next friend, Newt Barnes, against J. S. Mullen and J. H. Gregory, which was dismissed as to Gregory. There was a judgment for plaintiff, and defendant brings error. Reversed and remanded.

H. A. Ledbetter, for plaintiff in error.

T. B. Wilkins, for defendant in error.

Opinion by HAYSON, C. On November 15, 1913, Will Barnes, a minor, 20 years of age, entered into a written rental contract with J. S. Mullen, through J. H. Gregory, agent of Mullen, by the terms of which Mullen rented to Will Barnes about 40 acres of farm land for the year 1914. Will Barnes was then upon the land, having farmed it during the year 1913. On March 15, 1914, Barnes had broken up, bedded, and listed about 30 acres of land ready to plant the same, when he was evicted through the justice of the peace court by a forcible entry and detainer suit filed by Tippet & Haynes. They filed their suit against Barnes in January, 1914, and secured a judgment for possession. Mullen defended Barnes in the suit, and the cause was appealed to the district court; Mullen furnishing the appeal bond and attorney to litigate the case. On March 12, 1914, Tippet & Haynes obtained an order of the district court dismissing the appeal upon the ground that the matter had been compromised, and on March 15, 1914, through the justice of the peace court dispossessed Barnes. Mullen claims this was without his or Barnes' knowledge or consent, and had the order of dismissal set aside. Tippet & Haynes appealed to the Supreme Court and executed

a supersedeas bond to Barnes in the sum of $600. The district court overruled the motion of Barnes to place him again in possession. Barnes then through Newt Barnes, as his next friend, filed this action in the county court for $500 damages against J. S. Mullen and J. H. Gregory for breach of contract for failure to comply with the contract in protecting him in the peaceable possession of said land. The defendants Mullen and Gregory filed an answer setting up a general denial upon the part of Gregory and a general denial upon the part of Mullen. Mullen admitted the execution of the lease, but states that, if Barnes was evicted, he was evicted through no fault of Mullen, but that such eviction was due to the neglect of Barnes by suffering himself ·to be dispossessed by a trespasser or some other person than Mullen. An amended answer was then filed setting up about the same facts, except it set up that Gregory had nothing to do with the land except as agent only for Mullen. The amended answer also set up the various phases of the litigation. No reply was filed by plaintiff Barnes. The cause was tried to a jury, and a verdict rendered in favor of the plaintiff for $200 against Mullen and a motion to dismiss as to Gregory was sustained. Judgment was rendered against J. S. Mullen, and from this judgment he appeals, setting up eleven assignments of error, but urges particularly only the seventh assignment of error, which is:

"That the trial court erred in refusing to sustain the demurrer to the testimony of the plaintiff below, which was excepted to at the time."

The evidence of the plaintiff was substantially this: That Barnes leased from Mullen the land as above set forth. The lease was introduced in evidence. The lease contains no covenant of quiet enjoyment and peaceable possession. That Tippet & Haynes filed suit in the justice of the peace court for forcible entry and detainer not stating paramount title, but merely that they were entitled to possession. That judgment was rendered thereon for Tippet & Haynes and an appeal taken to the district court, Mullen making the appeal bond for Barnes. That Mullen paid all expenses ·of litigation and furnished counsel for Barnes. That later Barnes was dispossessed by writ of restitution in favor of Tippet & Haynes issued out of the justice of the peace court. That Barnes at the time he was dispossessed had broken up about 30 acres and prepared the same for planting, but had planted no crops. That the land that year would probably yield one-half bale of cotton to the acre and from 15 to 35 bushels of corn to

the acre. There was no evidence introduced as to the rental value of the land. At the conclusion of the plaintiff's testimony the defendant Mullen demurred to the plaintiff's testimony. The court overruled the demurrer and allowed the defendant an exception. The defendant then offered separately each pleading and file in the case of forcible entry and detainer as it was appealed to the district court and Supreme Court, which was excluded by the court, and exceptions saved. Defendants then moved for a dismissal as to J. H. Gregory, which was sustained. The defendant Mullen then moved for a directed verdict in his favor, which was by the court overruled and an exception saved.

Was the evidence of the plaintiff sufficient to sustain his case? Under the previous holdings of this court we think it was not. Bearing in mind that the lease contained no specific covenant for quiet enjoyment and peaceable possession, under the facts introduced by the plaintiff in this case, it would seem that the plaintiff's case must fail. There is no allegation and no proof that Tippet & Haynes had a title paramount to the plaintiff in error, Mullen, or that the eviction was through Mullen or any one deriving authority or title through him. In Holden v. Tidwell, 37 Okla. 553, 133 Pac. 54, 49 L. R. A. (N. S.) 369, Ann. Cas. 1915C, 394, it was held by this court as follows:

"Though a lease of land implied a covenant of quite enjoyment, yet that covenant is not designed as an indemnity against any and all disturbance of the lessee's enjoyment, but extends only to acts of the lessor or those deriving authority or title through him or from a paramount title."

And, again, in Brown v. International Land Co., 29 Okla. 341, 116 Pac. 799, it was held:

"To sustain an action for the breach of a covenant for quiet enjoyment in a lease. it is necessary for the plaintiff to show that he has been prevented from taking possession of the leased premises, or that his quiet enjoyment has been hindered or disturbed by the lessor, or some person deriving their right or title through him, or from a paramount title; a hindrance or disturbance by a mere intruder is not sufficient."

In view of the fact that the entire status of the litigation was set up in defendants' answer and facts stated therein sufficient to show that the appeal in the forcible entry and detainer case was then pending, and no reply having been filed by plaintiff, the plaintiff's evidence was insufficient to show paramount title in Tippet & Haynes. But, even if it could be inferred that Tippet & Haynes had paramount title, there is still another

essential requirement that plaintiff failed to establish by the evidence. The plaintiff failed to establish by any witness the rental value of the premises, but tried the case upon the theory that plaintiff was entitled to damages for the value of the loss of the crop that he would have raised had his quiet enjoyment and peaceable possession not been molested. The evidence shows that at the time of his dispossession he had planted no crop. In such a case the proper measure of damages would have been the rental value of the land together with the value of the work plaintiff had performed in getting ready to plant such crops.

In De Arman v. Oglesby, 49 Okla. 118, 152 Pac. 356, in a case where the facts were similar to the case at bar, this court, speaking through Kane, C. J., held:

"The true measure of damages, where a lessee of agricultural lands is wrongfully dispossessed and thereby hindered from cultivating the land, is the rental value of the land, plus the labor of breaking it or otherwise preparing it for the reception of the crop."

The court distinguishes in that case the difference between the measure of damages to growing crops and the value of the use of agricultural lands not yet planted to crops. From this case we quote at length:

"The second ground for reversal must be sustained. The record shows that the plaintiff leased the land for the purpose of raising cotton, wheat, oats, and other small grain; that he had sowed 14 acres of wheat which was up and looking well at the time he was dispossessed; that he had plowed part of the remaining land for the reception of spring crops, but had not sowed or planted anything except the wheat. For the purpose of establishing the amount of his recovery the plaintiff introduced evidence to show the value of the * * * crop and the condition in which it was found at the time of the taking. Evidence was also introduced tending to show the probable yield when matured, gathered, prepared and ready for sale, and the probable cost of the proper cultivation necessary to mature the crop, as well as the cost of gathering, preparing, and transporting to market, etc. Evidence of similar import was also introduced over the objection of the defendant for the purpose of establishing the value of the other crops which plaintiff would have planted or sown if she had not been dispossessed. * * * These cases support the rule that in a suit for damages for the destruction of a growing crop, such damages are to be ascertained as of the time of the injury, and the measure to be applied is compensation for the value of the crops in the condition in which they were found at the time of their destruction, and in arriving at their value it is proper to show the probable yield under proper cultivation and the value of such probable yield when matured, gathered, and prepared for sale, and the probable cost of proper cultivation to mature the crop as well as the cost of gathering, preparation, and transportation to market. However, we find no support in the authorities for the application of the foregoing rule to unsowed or unplanted crops which might have been raised except for the wrongful taking. Damages based upon such an hypothesis are highly speculative, and speculative profits supposed to have been lost have been universally discarded by the courts as a proper measure of damages. The true measure of damages, we think, where a lessee of agricultural lands is wrongfully dispossessed and thereby hindered from cultivating the land, is the rental value of the land, plus the labor of breaking it or otherwise preparing it for the reception of the crop."

So, in the case at bar, the plaintiff was pursuing the wrong theory in the trial court, and the evidence in its most favorable light, together with all inferences to be reasonably drawn from the same, fails to establish his case, and the demurrer to the evidence should have been sustained. The failure of the trial court to sustain the demurrer to the plaintiff's evidence was error.

The judgment of the trial court is therefore reversed, and the cause remanded, with instructions to grant a new trial.

By the Court: It is so ordered.