**PACIFIC INSURANCE ASSOCIATES, LTD., Appellee**

v.

**FASHIONS, INC., Appellant**

Civil No. 25-A

District Court of Guam

Appellate Division

January 31, 1963

*Counsel for Appellee:* W. SCOTT BARRETT, ESQ.
*Counsel for Appellant:* FINTON J. PHELAN, JR., ESQ.

Before GILMARTIN (deceased), *Presiding Judge;* FURBER, *Chief Justice*, High Court of the Trust Territory of the Pacific Islands and DUENAS, *Judge*, Island Court of Guam

PER CURIAM

### OPINION

This is a second appeal in an action for unlawful detainer under Sections 1159 to 1179a of the Guam Code of Civil Procedure. In Appeal Case Civil No. 13-A the action was remanded to the Island Court with instructions to grant the present appellant a new trial in accordance with the opinion on that appeal, which indicated that this appellant should be allowed to be fully heard on its defense (even though pleaded as a counter-claim and cross-complaint) of partial eviction. As a result of the new trial, the Island Court found there had been no partial eviction and entered judgment decreeing that all sums then on deposit in the Island Court which had been paid over pursuant to the orders of this Court to secure the rights of the parties be paid to the plaintiff-appellee, that the sublease in question had been forfeited, and that a writ of restitution

issue. The action is now before us on appeal from that judgment.

The plaintiff-appellee was the lessor in a sublease agreement assigned to the present defendant-appellant covering portions of lots numbers 1040 and 1051 in Agana, Guam, on which the defendant-appellant or its assignor was to erect a store building. The sublease was for a period of ten (10) years less one (1) day, with provision for renewal for an additional term of ten (10) years under certain conditions, or for a lesser additional term under other conditions.

At the new trial the defendant-appellant endeavored to prove two distinct partial evictions—one continuing since about the inception of the sublease based on an alleged error in the location of the wall between the plaintiff-appellee's building and that of the defendant-appellant, and the other based on the alleged use of the joint parking lot by a tenant or tenants of the plaintiff-appellee for a used and new car business during the period from July 15, 1954, to mid-December 1955.

 So far as the alleged partial eviction from about the inception of the sublease is concerned, it is clear that the defendant-appellant acquiesced in the placing of the building in question and made no complaint whatever about it until long after the trouble arose about the parking lot and the sublease had already run several years. Although the rent had been paid for five (5) years in advance, at the inception of the sublease, we believe that any partial eviction based on the location of the plaintiff-appellee's building must be considered to have been waived by the conduct of the parties. See *Duncan v. Granas*, 166 Cal. 41, 134 Pac. 979 (1913). We recognize, however, that in that case there was the additional element of payment of rent after the alleged partial eviction. In fact the parties seem to have been so friendly during the period of construction of the

buildings and surfacing of the parking lot that they paid little attention to the exact terms of the sublease agreement. The provision with regard to the parking lot reads as follows:—

"9. The parties hereto agree that the area between the buildings standing upon Lots Nos. 1040 and 1037, Agana, shall be used as a joint parking space for the convenience of the occupants of said buildings."

Yet it clearly appears from defendant's Exhibit 2 and the testimony concerning it, that the plaintiff-appellee's building on Lot 1037 as actually built abutted immediately against the defendant-appellant's building on Lot 1040, and left no room for a parking lot at the point specified in the agreement. Instead the parties shared the cost of putting a hard top on a parking lot in front of the buildings, the defendant-appellant paying half the cost. Prior to and throughout the new trial all concerned seem to have acquiesced in considering this parking lot as the one covered by the sublease. We accordingly believe that it must be considered to have been substituted by mutual agreement for that described in the sublease agreement.

The question of whether there was a substantial partial eviction from this substituted parking lot turns, in our opinion, on the correct interpretation of the provisions of the sublease with regard to the original parking lot, quoted above. The trial court made findings that the sublease "gave defendant a right to share in the use of said parking lot and that defendant and its patrons had the use of said parking lot. That the parking lot was also used from time to time by other persons but that there were during the period complained of by defendant, sufficient empty parking spaces during business hours so as to accommodate any of the defendant's customers and employees." We feel, however, that those findings do not cover

116

the point at issue, and that the defendant-appellant was entitled to greater right in the parking lot than these findings indicate. It is well settled that a lease should be construed to give effect to the intention of the parties as shown in the lease and that, in arriving at this intention, the surrounding circumstances and the object in view and intended to be accomplished by the parties at the time, are to be considered. 32 Am.Jur., Landlord and Tenant, Section 127.

■ The sublease in question here contained (in paragraph 4) an express acknowledgment by the sublessor that the sublessee was, at his own expense, constructing a store building upon the subleased premises and that it was the intent of the parties that the sublessee should have the use and enjoyment of said building as owner consistent with the sublessor's then existing leases. It also contained in paragraph 7 a covenant by the sublessor not to lease any additional units of the buildings upon Lots Nos. 1040 and 1051 to anyone in competition with or engaged in a like kind of business as the sublessee. The only reasonable inference is that the building in question was to be used for business catering to the public. We believe that, under the proper construction of paragraph 9 of the sublease, quoted above, in the light of the objectives sought by the sublease and the conduct of the parties, the defendant-appellant was entitled not merely to share in the use of the parking lot for itself and its customers, but also to have the parking lot kept free from use other than for access to the buildings and for such parking as was normally incident to businesses carried on within the buildings, and not to have the parking lot itself used for carrying on business or as a space for dead storage or as a demonstration area.

The evidence shows that the plaintiff-appellee, either directly or indirectly, authorized a tenant of its adjoining building, over the repeated objections of the defendant-

appellant, to use this parking lot for buying and selling of automobiles, storage of used cars and equipment, and as a stand for its demonstrators. There is no conflict in the testimony as to such use from July 15, 1954, through September 1954, and such conflict as there is as to the period from October 1954 to mid-December 1955 relates to the part and proportion of the parking lot used for this automobile business, rather than to any showing that the lot was not itself used as a place of business for other than normal parking incident to a business carried on within the buildings in question. While it may be difficult to ascertain with a reasonable degree of certainty the exact extent to which this use of the parking lot damaged the defendant-appellant, it was clearly detrimental to the latter and its business and we believe was a substantial wrongful interference by the sublessor with the rights of its sublessee.

We recognize that, according to the great weight of authority, an interference with a lessee's rights by his lessor which amounts to merely a constructive eviction will not relieve the lessee from the payment of the rent contracted for, unless he surrenders or abandons the leased premises, although generally recoupment of damages for breach of a covenant of quiet enjoyment is allowable in an action for the rent reserved. 32 Am.Jur., Landlord and Tenant, Sections 479 and 538. On the other hand it is generally accepted that a partial eviction by the lessor from a part of the premises will relieve the lessee from liability for future rents, and that the legal effect of such eviction from a part of the premises is to suspend the rent entirely, even though the lessee remains in occupancy of the remainder of the premises. 32 Am.Jur., Landlord and Tenant, Section 480; Skaggs v. Emerson (1875) 50 Cal. 3.

It is difficult to reconcile all of the cases drawing a distinction between constructive eviction and an actual partial eviction and it is not in all cases clear whether a

particular breach complained of has been considered as an actual partial eviction or a constructive eviction. As stated in 20 American Law Reports Annotated at page 1373:

"It has been said that it is extremely difficult to define with technical accuracy what is an eviction. The word 'eviction' was formerly used to denote an expulsion by the assertion of a paramount title, or by process of law. But that sort of an eviction is not necessary to constitute a suspension of the rent, because it is now well settled that, if a tenant loses the benefit of the enjoyment of any portion of the demised premises, by the act of the landlord, the rent is thereby suspended. Upton v. Townend (Eng.) supra." (The reference is to *Upton v. Townend* (1855) 17 C.B. 30, 139 Eng. Reprint, 976, 25 L.J.C.P.N.S. 44, 1 Jur. N.S. 1089, 4 Week. Rep. 56.)

We believe that the present rule is correctly stated in *Holden v. Tidwell* (1913) 37 Okla. 553, 49 L.R.A. (N.S.) 369, 133 Pac. 54, Ann. Cas. 1915C 394, quoted in 20 A.L.R. at page 1374 as follows:—

"Originally an eviction was understood to be a dispossession of the tenant by some act of his landlord, or the failure of his title. Of late years it has come to include any wrongful act of his landlord which may result in an interference with the tenant's possession in whole or in part. The act may be one of omission as well as of commission. The rent is suspended by an eviction, because it is plainly unjust that the landlord should be permitted to collect it, while by his own act he deprives the tenant of the possession which is the consideration for it. But the landlord is not responsible for the actions of others lawfully done on their own premises. He is liable only for his own acts and for such acts of others as it was his duty to protect his tenant from."

See the entire section of the annotation concerning the tenant's right to claim partial actual eviction in 20 A.L.R. 1372 to 1378.

It is well established that the appurtenances, including easements and servitudes, granted either expressly in the lease or by implication, are included in the leased premises which the tenant is entitled to the quiet possession and

enjoyment of to the extent of such rights, even though they may be shared with others. 32 Am.Jur., Landlord and Tenant, Section 169, including the portion added following note 14 by the 1962 Cumulative Supplement to that volume, page 18; *Owsley v. Hamner* (1951) 36 Cal.2d 710, 227 P.2d 263, 24 A.L.R.2d 112 and the annotation following it in 24 A.L.R.2d.

The closest case to the present one, which has come to our attention, is *Hamilton v. Graybill* (1907) 19 Misc. 521, 43 N.Y.Supp. 1079, cited with brief summary in 20 A.L.R. 1377. In that case it appears that a tenant had leased some rooms which had two entrances, which the court considered as appurtenances to the leased rooms. The tenant was actually and physically ousted and kept expelled from the use of one of these entrances. The court considered that this was not merely a constructive eviction from the rooms, but constituted an actual eviction from a part of the premises, which, though the tenant continued to occupy the rooms, had the effect of suspending the entire rent so long as the eviction endured.

 We are of the opinion that similarly here, the physical use of the parking lot as a place of business which the sublessor authorized in violation of the sublessee's right, as explained above, constituted an actual partial eviction and suspended the whole rent as such during the period of this partial eviction from July 15, 1954, to mid-December 1955. The rent for the first five (5) years of the sublease, including the period of this partial eviction, had been paid in advance. So, as far as the rent reserved in the sublease is concerned, as distinguished from any question of payment for use and occupation of the remainder of the premises, the rent was over-paid at the time of the bringing of this action, even though there may be question as to how much it was over-paid or how much of it, if any, the defendant-appellant might have been entitled to get back.

According to a number of authorities a tenant in such a situation is not even liable in quantum meruit for use and occupation of such part of the premises as he retains while the partial eviction continues, while others hold that he is entitled to a reduction in the rent, and it has been held that, where the rent has been paid in advance, the tenant may recover back the rent paid, or at least a proportionate part of it. The defendant-appellant has indicated in its brief and throughout these appeals a willingness to pay for the portion of the premises actually occupied and has evidenced its good faith by the payments made into the registry of this court to secure the rights of the parties. We believe that, under all the circumstances, the defendant-appellant was entitled to at least an allowance for such damages as it could show with reasonable certainty flowed from the partial eviction or if it could not so show the damages, then in any event, to an allowance for nominal damages. 32 Am.Jur., Landlord and Tenant, Sections 265 (especially notes 8, 13, and 14), 480 and 490; 20 A.L.R. 1369; 28 A.L.R. 1334; 64 A.L.R. 905.

The whole theory on which a partial eviction is held to suspend the entire rent is that there can be no apportionment because the partial eviction is the wrongful act of the landlord himself and no one should be encouraged to disturb a tenant in the possession of that which, according to the policy of the law, he ought to protect and defend, and that a tenant should not be expected, at its peril, to estimate the exact amount due for partial occupancy under pain of possible further eviction through a proceeding for unlawful detainer. We believe that this theory applies equally to the present situation. It is a fundamental principle in equity that a person will not be permitted to take advantage of his own wrong. 19 Am.Jur., Equity, Section 471. It has also been held several times that forcible entry and detainer, or unlawful detainer, should not be allowed where

that would be inequitable. See *Farmer v. Pitts* (Nebr. 1922) 187 N.W. 95, 24 A.L.R. 719, in which a judgment in forcible entry and detainer based on nonpayment of rent was reversed, the court stating at page 722 of 24 A.L.R.:

"The writer of this opinion cannot but be impressed with the idea, which seems to come from a reading of the record, that it was not the rent the lessor wanted, but rather a forfeiture of the lease contract. Now, the provision of the statute regarding a forcible entry and detention, as well as the provision in the lease as to the nonpayment of the rent, is for the security of such rental to the lessor, not for the purpose of giving him an undue advantage and permitting him unjustly to obtain a forfeiture of the lease."

Also: *Abrams v. Watson* (1877) 59 Ala. 524, cited and quoted from in 16 A.L.R. 444; *Humphrey v. Humphrey* (1950) 254 Ala. 395, 48 So.2d, 424, 31 A.L.R.2d 315, and the annotations following it in A.L.R.2d.

The plaintiff-appellee by its own wrong having created this uncertainty as to what deduction should be made from the rent already paid and therefore, as to the period for which the defendant-appellant should equitably be considered to have paid, we believe the plaintiff-appellee's right to relief through the summary procedure of unlawful detainer was barred until such time as the allowance for the partial eviction was either agreed upon or adjudicated and, if it then developed that any rent was in default, a proper notice was given in accordance with Section 1161 of the Guam Code of Civil Procedure specifying the correct amount due.

It accordingly follows that the plaintiff-appellee was not entitled to recover possession of the property at the time it brought this action, and therefore is not entitled to recover any rent in this action for unlawful detainer.

"The primary purpose of such an action is for the recovery of the possession of the property. The recovery of rent is a mere incident

to the main object. . . . When the main object of the action fails, the incidents fall with it." *Markham v. Fralik* (1934) 2 Cal.2d, 221, 227.

 This leaves the question, however, of how the monies, which have been paid into the Registry of the District Court pursuant to the order of this Court to secure the rights of the parties, should be distributed. In order to avoid circuity of action, it is believed that these should be divided in this action on the basis of the amounts due for either rent or use and occupation and the costs in this action. We have already indicated in our former opinion in Appeal Case Civil No. 13-A that, under the circumstances, the defendant-appellant has an obligation to pay, upon a quantum meruit basis, for use and occupation of such part of the premises as it retained during the period of the partial eviction. We believe, however, that this cannot equitably and fairly be held to exceed the rent stipulated in the lease, less an allowance for the partial eviction, and that for the period subsequent thereto the rent should be merely that provided in the lease, and that the defendant-appellant should be allowed its costs out of the sums deposited. The effect of the trial court's judgment and the "order for payment" pursuant to it, which recited that it was a special order pursuant to Section 942 of the Guam Code of Civil Procedure, has been to allow the plaintiff-appellee, because of the supposed forfeiture of the sublease, an increase of about eighty percent (80%) above the rent stipulated, for a considerable period following the alleged default in the rent. We consider this inequitable and that in the distribution of the funds now on hand sufficient should be allowed the defendant-appellant (in addition to the other allowances discussed herein) to counterbalance this payment in excess of the rent stipulated in the sublease so as not to allow the plaintiff-appellee to profit from its own wrong.

123

We consider that the defendant-appellant has failed to show with reasonable certainty what its damages were flowing from the partial eviction, but that even under these circumstances it is entitled, as stated above, to an allowance of nominal damages, which we fix at one dollar ($1.00) a month, for the period from July 15, 1954, to December 15, 1955, or a total of seventeen dollars ($17.00), from the rent stipulated.

The judgment of the Island Court of Guam, entered May 6, 1960 in its Civil Case 13-58, is hereby set aside. The funds now held in this action in the Registry of the District Court of Guam are ordered transferred to the Registry of the Island Court of Guam and this action is remanded to the Island Court of Guam with the following instructions:—

A. To enter judgment for the defendant Fashions, Incorporated, with costs.

B. To divide the funds now in the Registry of this Court in such a manner as to allow the plaintiff, Pacific Insurance Associates, Ltd., out of all funds distributed through the Registry of the Court in this action, a total (including the $1,750.00 ordered on March 11, 1960, paid to the plaintiff pursuant to stipulation of counsel and the $6,636.28 ordered paid to the plaintiff pursuant to the judgment herein set aside) of only the amount stipulated as due for rent in the sublease in question from the time of the alleged default in payment of rent up to the time of the order making the division of the funds now on hand, less $17.00, and further less the taxable costs of the defendant Fashions, Incorporated, in this action, and then to give the balance to the defendant Fashions, Incorporated.

Due to his death, Judge Gilmartin did not take part in this opinion.