DIEFFENBACH v. McINTYRE.

No. 34585.   Dec. 16, 1952.

Rehearing Denied March 10, 1953,

*254 P. 2d 346.*

McNeill & McNeill and R. P. Colley, Tulsa, for plaintiff in error.

Lamoin Oldham and Wheeler & Wheeler, Tulsa, for defendant in error.

BINGAMAN, J.   This action was brought by plaintiff, Mildred E. McIntyre, against the defendant, Nevin J. Dieffenbach, seeking to recover rental paid, damages for repairs made upon a building leased by her from the defendant, and anticipated profits lost by her because of her removal from the building. The trial court submitted the cause to the jury as to the rental paid and cost of repairs, but refused to permit the introduction of evidence as to loss of anticipated profits. Defendant appeals from the judgment against him rendered on a verdict by the jury in favor of plaintiff, and plaintiff cross-appeals from the refusal of the court to permit her to introduce evidence as to loss of anticipated profits.

Undisputed facts are that plaintiff, prior to the time she leased the building from defendant, was operating a beauty parlor in one of the downtown buildings in Tulsa; that she was required to vacate the rooms used by her in said building on or before May 1, 1946, and that

during the month of April she sought to find another place in which to conduct her beauty parlor. She got in touch with defendant, who was attorney in fact for his mother-in-law, who owned a building farther removed from the business section of Tulsa, and sought to lease a portion thereof from him for a term of years. The transaction finally resulted in her leasing the entire building, which consisted of four units of several rooms each, two upstairs and two downstairs. She installed her beauty parlor in one of the downstairs units, but upon failure to obtain the possession of the entire building removed therefrom to other quarters on or about the 1st of August, 1946.

Plaintiff testified that at or prior to the time she signed the lease on the building, which lease ran for a term of three years at a rental of $500 per month, she was assured by defendant that he had raised the rent on the other three units in the building from $50 to $150 per month, and had given 30 day notices requiring them to remove, and that they could not possibly remain there and pay the rental which he had fixed as the new rate on the property. Thereafter, she testified, he informed her that he could not give her possession until the 1st of June, and she made arrangements to stay in her old quarters for another month. On the 1st of June, when she was ready to move in, two of the units in the building were still occupied, and she hesitated to move in, but upon assurance from defendant to her attorney that he would obtain possession of the two occupied units on or before June 7th, she moved into the unit which she proposed to use as a beauty parlor. When the lease was signed she paid defendant one month's rent of $500, and she expended additional sums in fixing up the unit occupied by her. She testified that defendant failed to oust the tenants from the two units occupied by them, although one of them subsequently left, and that the occupant of the other unit offered her the regular $50 per month rental, but she refused to accept. the

same, telling them that arrangements for payments should be made with defendant. This unit was still occupied when she, left the building and the tenants testified that they thereafter paid defendant the regular rental of $50 per month and were still occupying the unit and paying such rental at the time of the trial.

Plaintiff's attorney testified that when he found out the defendant could not deliver possession on the 1st of June, he talked to him with a view of revising the lease to include only a portion of the building, but that defendant assured him that he would have all of the tenants out by June 7th and that it would be all right for plaintiff to move in.

The defendant denied all these statements. Therefore, the evidence being conflicting the question was properly submitted to the jury by the trial court and their verdict in favor of plaintiff was supported by competent evidence.

When plaintiff sought to introduce testimony as to the profits she made in her former location and the profits she made while in defendant's building, and the drop in her profits when she removed to another building, the trial court sustained defendant's objection thereto, and did not permit that testimony to go to the jury.

Defendant in his brief asserts that the major and paramount question for decision is whether, as a matter of law, the defendant, when he executed the lease of April 30th, transferred to the plaintiff the legal right to possession, and was under no further obligation, or whether he was obligated to go further and place the plaintiff in actual possession of the property on June 1st. In arguing this question he asserts that the lease transferred the legal right to possession to the plaintiff, which was all he was required to do; that the occupants holding over after the term of their rental periods had expired by reason of his notices to them were trespassers, or tenants at sufferance of plaintiff, and that he was not required to place

the plaintiff in possession as against them. In support of this contention, which is argued in several subheads, he cites Brown v. International Land Co., 29 Okla. 341, 116 P. 799; Holden v. Tidwell, 37 Okla. 553, 133 P. 54, and other similar cases. We do not agree with this contention. An examination of the cases cited in support thereof discloses that they are not applicable to the fact situation herein involved. In none of them was the question of the failure of the lessor to place the lessee in actual possession at the beginning of the term involved, but rather they involved trespassing committed upon the property subsequent to the taking of possession thereof by the lessee.

Defendant calls attention to the fact that the so-called American rule as to the placing of a lessee in possession required only that he be placed in legal possession, while the other, or English rule, holds that there is an implied covenant to place the lessee in actual possession (see Hannan v. Dusch, 154 Va. 356, 70 A.L.R. 141), and asserts that the American rule is generally prevalent in the United States. This state, among numerous others, has followed the other, or so-called English rule, and holds that the lessor is required to place the lessee in actual possession of the property. King v. Coombs, 36 Okla. 396, 122 P. 181; Flannagan v. Dickerson, 103 Okla. 206, 229 P. 552. In these cases we recognized and adhered to the rule holding that the lease contained an implied obligation to place the lessee in actual possession. In Hannan v. Dusch, supra, the court cited and discussed numerous cases which adhered to either one rule or the other, and in the note to that case a number of these cases are analyzed. The states listed in the opinion, on page 142 of 70 A. L. R. show that a large majority of the states follow the so-called English rule adopted and followed by this court in the cases above cited, and in Stewart v. Murphy, 95 Kan. 421, 148 P. 609, it is stated that by the great weight of authority the covenant to put the leesee in possession at the beginning of the term is implied, citing numerous cases.

It follows that in the instant case the lessee was entitled to be put in possession of the entire building by the lessor on or before June 1, 1946, and the failure of the defendant to so place her in possession, or at least to place her in possession June 7th, at which time he assured her attorney she would receive possession of the entire building, was a breach of the lease.

Defendant contends that the breach was only a partial breach since it did not interfere with the operation of the beauty parlor by plaintiff, but we think it was a complete breach, since it forced the plaintiff either to bring ouster proceedings against the tenants holding over, or to continue to pay $500 a month rent for a portion of the premises only.

Defendant further claims that the trial court erred in giving to the jury instructions Nos. 3 and 4. By instruction No. 3, the jury was told that if they found by a preponderance of the evidence that plaintiff entered into possession of two units of the leased premises on June 1st, with the promise and agreement on the part of defendant that if she would take possession of said units on that date he would place her in possession of the remaining units on June 7th or 8th, and he failed to do so, the defendant committed an actionable breach of the contract and their verdict should be for plaintiff. By instruction No. 4, they were told that if they found for the plaintiff, her damages should be for the sum of $500, the first month's rental. admittedly paid by her to the defendant on April 30th, and also such additional damages as would compensate her for moving into the building and remodeling the part which she used for the beauty parlor, not to exceed the sum of $574.95, claimed by plaintiff for such expenses. Plaintiff contends that the true measure of damages due a tenant on failure of the landlord to deliver possession is the difference between the rental agreed upon and the actual rental value of the property, together with special damages incurred by the lessee or tenant in

preparing to occupy the premises, citing Anderson v. Hodges, 187 Okla. 43, 100 P. 2d 853; Dills v. Calloway, 175 Okla. 395, 52 P. 2d 707, and other similar cases. However, in these cases the tenants had paid no rental and had not moved into the property in reliance upon any representation of defendant that the defendant would place them in the undisturbed possession thereof. Defendant also asserts that the trial court erred in refusing to give the jury several requested instructions upon his theory of the case as heretofore outlined in this opinion. We have examined the instructions given and the requested instructions refused and hold that the trial court properly instructed the jury, and that it did not err in refusing to give the instructions requested by defendant.

Plaintiff in her cross-appeal contends that the court erred in refusing to permit her to present to the jury for its consideration the profits made by her while operating in her previous location, the profits made by her while located in defendant's building, and the loss of profits occasioned by her removal therefrom. We are unable to agree with this contention.

While it is true that we have in numerous cases held that the loss of profits in an established business is a proper element of damages, the business of plaintiff in her former uptown location could not be used, we think, to measure the damages sustained by her, because of her removal from the building of defendant. She occupied the building of defendant only two months, and that in our opinion was not a sufficient length of time to constitute her business there an established business. In 25 C.J.S. p. 518, §42b, it is stated that in cases where the loss of anticipated profits is claimed as an element of damages, the business claimed to have been interrupted must be an established one, and it must be shown that it has been successfully conducted for such a length of time and has such a trade established that the profits therefrom are reasonably ascertainable.

In our judgment, the business of defendant, after her removal from her uptown location to defendant's building, had not been conducted for such length of time as to render it an established business, and the trial court properly refused to permit evidence of her claimed losses to go to the jury.

It follows that the judgment for plaintiff as rendered by the lower court must be and hereby is affirmed.

In her brief plaintiff calls attention to the fact that a supersedeas bond has been filed by defendant and asks for judgment on the supersedeas bond. Judgment is therefore rendered against Julia LeBus and Kay L. Dieffenbach, sureties on the supersedeas bond, for $1,152.92, with interest at the rate of 6 percentum from October 26, 1949, and for costs.

HALLEY, V. C. J., and WELCH, CORN, GIBSON, DAVISON, JOHNSON, and O'NEAL, JJ., concur. .