· **Helen Jenean BURK, Plaintiff,**

v.

**K–MART CORPORATION, Defendant.**

**No. 67785.**

Supreme Court of Oklahoma.

Feb. 7, 1989.

---

1. 75 O.S.Supp.1988 §§ 250 et seq.

Earl W. Wolfe, Tulsa, for plaintiff.

Doerner, Stuart, Saunders, Daniel & Anderson by Lynn Paul Mattson, Charles S. Plumb and Kathy R. Neal, Tulsa, for defendant.

Redwine and Kappel by Henry W. Kappel, Norman, for amicus curiae George Driscoll.

Horning, Johnson, Grove, Moore & Hulett by James R. Moore and William C. Isbell, Oklahoma City, for amicus curiae Oklahoma State Lodge Fraternal Order of Police Professional Fire Fighters of Oklahoma.

Boone, Smith, Davis & Hurst by Frederic N. Schneider, III, David P. Page and Carol A. Grissom, Tulsa, for amicus curiae American Airlines, Inc.

Hall, Estill, Hardwick, Gable, Golden & Nelson by J. Patrick Cremin, Tulsa, for amicus curiae Oklahoma Council of the American Soc. for Personnel Admin.

Ben A. Goff, P.C. by Ben A. Goff and Marilyn D. Barringer, Oklahoma City, amicus curiae for plaintiff.

HODGES, Justice.

A terminable-at-will employee brought an action in contract and tort against her employer for breach of the implied covenant of good faith and fair dealing in her employment contract. Both causes of action were brought in reliance on this Court's recent decision in *Hall v. Farmers Insurance Exchange*, 713 P.2d 1027 (Okla.1985). The employee argued the employer's agents harassed her, prevented her from performing her duties and by so doing constructively discharged her from her job. She further asserts that the employer's agent told her he would not recommend her for promotion because of her sex. She seeks lost wages, damages for alleged injury to her reputation and punitive damages for breach of the implied covenant.

The employer denied the purported existence of a claim in tort for a breach of an implied covenant of good faith, and also asserted the contract action did not exist because the employee's termination resulted in no violation of the employee's constitutional rights.

The United States District Court for the Northern District of Oklahoma certified for this Court's answer pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1981 §§ 1601 through 1612, six questions of law:

1. In Oklahoma, is there an implied obligation of good faith and fair dealing in reference to termination in every employment-at-will contract?

2. Is the implied obligation of good faith mutual between the employer and employee?

3. Does the breach of such implied obligation, assuming there is one, sound in contract and/or tort?

4. If the answer to question No. 3 is "contract", what are the recoverable damages for breach of the implied covenant?

5. If the answer to question No. 3 is "tort", what is the character of defendant's conduct that would permit recovery of punitive damages?

6. Whether the answer to question No. 3 is tort or contract, or both, what is the extent of the duty, if any, of either party to mitigate damages?

■ We reject the implication of an obligation of good faith and fair dealing in every employment-at-will contract. Because we answer the first question in the negative it is unnecessary for us to address the remaining questions.

This Court has long recognized the basic principle that an employment contract of indefinite duration may be terminated without cause at any time without incurring liability for breach of contract.[1] Such indefinite employment contracts are deemed terminable-at-will. The classic statement of the at-will rule was that an employer may discharge an employee for good cause, for no cause or even for cause morally wrong, without being thereby guilty of legal wrong.[2] Principles of freedom of contract and the importance of economic growth are attributed to the development of the terminable-at-will doctrine.[3]

This Court has observed the terminable-at-will doctrine is "not absolute however, and the interests of the people of Oklahoma are not best served by a marketplace of cut-throat business dealings where the law of the jungle is thinly clad in contractual lace." *Hall,* 713 P.2d at 1029. The Oklahoma Legislature, not unlike Congress and other state legislatures, has enacted various statutory exceptions to the doctrine.[4] Similarly the courts have created exceptions to the employment-at-will rule.

The employment-at-will doctrine has been judicially limited in a few jurisdictions by the imposition of an implied covenant of good faith and fair dealing into the employment contract. The implied covenant which has been viewed as restricting the employer's ability to discharge purportedly protects the right of the parties to receive the benefits of the employment agreement which they willingly entered. The wrongful denial of the party's right to those benefits will breach the duty of good faith implicit in the employment contract. This Court has been asked to consider whether such implied covenant exists in Oklahoma. We find that it does not.

In *Hall, supra,* this Court held a terminable-at-will contract between an insurance agent and insurance company does include an implied covenant of good faith in reference to the termination of an agency relationship. In so holding we quoted with approval from *Wright v. Fidelity and Deposit Co. of Maryland,* 176 Okla. 274, 54 P.2d 1084, 1087 (1936): " 'A contract consists not only of the agreements which the parties have expressed in words, but also

1. *Hinson v. Cameron,* 742 P.2d at 552 n. 6; *Pierce v. Franklin Elect. Co.,* 737 P.2d 921, 923 n. 4 (Okla.1987); *Singh v. Cities Service Oil Co.,* 554 P.2d 1367, 1369 (Okla.1976); *Foster v. Atlas Life Ins. Co.,* 154 Okla. 30, 6 P.2d 805, 808 (1932).

2. *Hillesland v. Federal Land Bank Ass'n,* 407 N.W.2d 206, 211 (N.D.1987) (quoting *Payne v. Western & Atlantic Railroad Co.,* 81 Tenn. 507, 519–520 (1884), *overruled on other grounds, Hutton v. Watters,* 132 Tenn. 527, 179 S.W. 134, 137–138 (1915)). *See also* 9 S. Williston, *Contracts* § 1–17 (3d ed. 1967).

3. *Parnar v. Americana Hotels, Inc.,* 65 Haw. 370, 652 P.2d 625, 628 (1982). *See also* Feinman, *The Development of the Employment at Will Rule,* 20 Amer.J.Leg.Hist. 118 (1976); Blades, *Employment at Will vs. Individual Freedom: On Limiting the Abusive Exercise of Employer Power,* 67 Colum.L.Rev. 1404 (1967).

4. 25 O.S.Supp. 1985 §§ 1302, 1505(c)(1) (discriminatory practice for an employer to discharge an individual because of race, color, religion, sex, national origin, age, or handicap and the Oklahoma Human Rights Commission has authority to order reinstatement with or without back pay, less amount earned or earnable with reasonable diligence by such employees); 38 O.S.1981 §§ 34 and 35 (employer who discharges employee because of employee's absence from employment due to serving on a grand jury is civilly liable for both actual and exemplary damages as well as guilty of criminal misdemeanor); 44 O.S.1981 § 208 (employer subject to fine or imprisonment for discharge of employee because of serving in military forces); 40 O.S.1981 § 199 (misdemeanor for employer to discharge employee because employee filed a complaint with employer or the Commissioner of Labor with regard to hour or safety violations); 85 O.S.1981 §§ 5 and 6 (employee who has filed a workers' compensation claim may not be discharged for exercising statutory right and is entitled to recover damages from the employer).

of the obligations which are reasonably implied.... Every contract contains implied covenants that neither party shall do anything that will destroy or injure another party's right to receive the fruits of the contract.'" We concluded in *Hall* the agent had a breach of contract action where the principal wrongfully terminated the agency for the unconscionable purpose of depriving the agent of the future payments of renewal premiums as a penalty for his having voiced his objections to controversial company actions concerning the termination of a fellow agent.

Subsequent to the *Hall* pronouncement we rendered our opinion in *Hinson v. Cameron*, 742 P.2d 549 (Okla.1987). In *Hinson* we observed that the *Hall* holding has come to be perceived as creating a new cause of action in favor of an at-will employee discharged in bad faith. This Court construed the *Hall* decision as standing "for the rule that an agent may recover from the principal when the latter has, in bad faith, deprived him of the fruits of his own labor." *Hinson*, 742 P.2d at 552. The plaintiff's tort claim for wrongful discharge in *Hinson* failed because the plaintiff was suing her employer for damages other than earned income and the legal relationship dealt with that of master and servant, not principal and agent as in *Hall*. As the case was factually distinguishable from *Hall*, the plaintiff was denied a cause of action for wrongful discharge from employment.

In *Hall*, this Court expressly recognized this implied covenant in the context of an agency contract. In dictum contained in the *Hinson* opinion we addressed the applicability of the covenant with regard to employment-at-will contracts and left for another day that decision.

Variant approaches have developed in those jurisdictions which have adopted the implication of a covenant of good faith and fair dealing in employment contracts. The most expansive view subjects the employer to liability whenever the employee is discharged without just cause in all employment-at-will contracts.[5] In *Hinson*, we noted this approach in assuming there may be a covenant of good faith in every at-will employment contract and concluded the covenant "does not operate to forbid employment severance except for good cause." *Id.* at 554 (*citing Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025, 1040 (1985)). As this Court has correctly observed, if we were to adopt a contrary view we would "'subject each discharge to judicial incursions into the amorphous concept of bad faith.'" *Hinson*, 742 P.2d at 554 (*citing Parnar v. American Hotels*, 65 Hawaii 370, 652 P.2d 625, 629 (1982); *Brockmeyer v. Dun & Bradstreet*, 113 Wis.2d 561, 335 N.W.2d 834, 838 (1983)).

In *Hinson*, this Court explicitly declined to impose upon the employer a legal duty not to terminate an at-will employee in bad faith. Today we hold there is no implied covenant of good faith and fair dealing that governs the employer's decision to terminate in an employment-at-will contract.

Our view is consistent with that of the Supreme Court of Kansas. In *Morriss v. Coleman Co.*, 241 Kan. 501, 738 P.2d 841 (1987), the court surveyed the various jurisdictions concerning this question and concluded "the principle of law stated in Restatement (Second) of Contracts § 205, that every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement, is overly broad and should not be applicable to employment-at-will contracts."[6]

Similarly, the New Mexico courts have declined to recognize either a tort or contract action for breach of the covenant of good faith and fair dealing, in the context of discharging an at-will employee.[7] In *Vigil v. Arzola*, 102 N.M. 682, 699 P.2d 613 (Ct.App.1983), *rev'd in part on other*

---

**5.** *Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980); *Khanna v. Microdata Corp.*, 170 Cal.App.3d 250, 262, 215 Cal.Rptr. 860, 867 (1985). *See also* cases cited in *Hinson*, 742 P.2d at 554 n. 17.

**6.** *See also Pittman v. Larson Distributing Co.*, 724 P.2d 1379 (Colo.App.1986).

**7.** *Salazar v. Furr's, Inc.*, 629 F.Supp. 1403, 1409–10 (D.N.M.1986).

*grounds*, 101 N.M. 687, 687 P.2d 1038 (1984), the court however recognized an action for wrongful discharge by an employer of an at-will employee on the basis of tort focusing on the employer's duty to act in accordance with public policy. It reasoned such breach of duty is more amenable to tort analysis rather than a contract based analysis. It observed, however, its adoption of the new cause of action did not abrogate the long-standing terminable-at-will rule but only limited its application to those situations in which the employee's discharge results from the employer's violation of a clear public policy. While observing several specific categories under the public policy exception, it stated it would not attempt to fully define it but rather would leave such determination on a case-by-case basis.

The Minnesota courts likewise have rejected the implication of a covenant of good faith and fair dealing into every employment contract.[8] However, they have also followed the majority of jurisdictions and have adopted the judicially created public policy exception to the employment-at-will doctrine.[9] The *Phipps* court stated it viewed the public policy exception as significantly different from a covenant of good faith and fair dealing inasmuch as: (1) a public policy exception can be reasonably defined by reference to clear mandates of legislative or judicially recognized public policy, and (2) the courts have traditionally interpreted the effect of illegality on contracts.

Those jurisdictions which have adopted the public policy exception have done so to accommodate the competing interests of society, the employee and the employer. As aptly stated by the Illinois Court of Appeals in *Palmateer v. International*

*Harvester Co.*, 85 Ill.2d 124, 129, 52 Ill.Dec. 13, 15, 421 N.E.2d 876, 878 (1981):

"With the rise of large corporations conducting specialized operations and employing relatively immobile workers who often have no other place to market their skills, recognition that the employer and employee do not stand on equal footing is realistic. In addition, unchecked employer power, like unchecked employee power, has been seen to present a distinct threat to the public policy carefully considered and adopted by society as a whole. As a result, it is now recognized that a proper balance must be maintained among the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out." (citations omitted).

■ We thus follow the modern trend and adopt today the public policy exception to the at-will termination rule in a narrow class of cases in which the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law. We recognize this new cause of action in tort.[10] It is well settled in Oklahoma a tort may arise in the course of the performance of a contract and that tort may then be the basis for recovery even though it is the contract that creates the relationship between the parties.[11] An employer's termination of an at-will employee in contravention of a clear mandate of public policy is a tortious breach of contractual obligations.[12]

In *Hinson*, this Court identified various actionable public policy grounds recognized by other jurisdictions under our discussion concerning the nationally recognized public policy exception. In light of the vague meaning of the term public policy we be-

8. *Hunt v. IBM Mid America Employees Federal Credit Union*, 384 N.W.2d 853 (Minn.1986).

9. *Phipps v. Clark Oil & Refining Corp.*, 396 N.W.2d 588 (Minn.App.1986).

10. Recoverable damages including punitive damages in such actions are governed by our statutory and common law principles of tort liability.

11. *Hall Jones Oil Corporation v. Claro*, 459 P.2d 858, 861 (Okla.1969); *Woods Petroleum v. Delhi Gas Pipeline*, 700 P.2d 1023, 1027 (Okla.App. 1983).

12. We note that other actions for breach of contract are not disturbed by this opinion.

lieve the public policy exception must be tightly circumscribed. The Supreme Court of Hawaii in *Parnar v. Americana Hotels, Inc.*, 652 P.2d at 631, in holding that an employer may be held liable where his discharge of an employee violates a clear mandate of public policy, stated:

"In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy. However, courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject."

Accordingly, we believe the circumstances which present an actionable tort claim under Oklahoma law is where an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy.

We note that where the employee's discharge is motivated by the employer's desire to avoid payment of benefits already earned by the employee, such as future commissions based on past service as in the *Hall* case, the discharge has been characterized "as a reason contrary to public purpose."[13]

We think the public policy exception to the at-will employment doctrine adopted today "serves the cause of equity as well as the interests of the marketplace." *Hall*, 713 P.2d at 1031. In *Brockmeyer, supra*, the court described the practical effect of the narrowly circumscribed public policy exception:

"Employee job security interests are safeguarded against employer actions that undermine fundamental policy preferences. Employers retain sufficient flexibility to make needed personnel decisions in order to adapt to changing economic conditions. Society also benefits from our holding in a number of ways. A more stable job market is achieved. Well-established public policies are advanced. Finally, the public is protected against frivolous lawsuits since courts will be able to screen cases on motions to dismiss for failure to state a claim or for summary judgment if the discharged employee cannot allege a clear expression of public policy." *Id.* 335 N.W.2d at 841.

In sum, we hold there is no implied obligation of good faith and fair dealing in reference to termination in any employment-at-will contract. We do recognize today a limited public policy exception to the terminable-at-will rule as an actionable tort claim in cases in which the discharge is contrary to a clear mandate of public policy.

CERTIFIED QUESTIONS ANSWERED.

HARGRAVE, C.J., and HODGES, DOOLIN, ALMA WILSON and SUMMERS, JJ., concur.

KAUGER, J., concurs in result.

OPALA, V.C.J., and LAVENDER, J., concur in part, dissent in part.

SIMMS, J., dissents.

OPALA, Vice Chief Justice, with whom LAVENDER, Justice, joins, concurring in part and dissenting in part.

In today's opinion the court declares there is no implied obligation of good faith and fair dealing in any employment-at-will contract. The court additionally pronounces that an at-will employee may have an actionable tort claim if his discharge is "contrary to a clear mandate of public policy as articulated by constitutional, statu-

---

**13.** *Cort v. Bristol–Myers Co.*, 385 Mass. 300, 431 N.E.2d 908 (1982). *See also Magnan v. Anaconda Industries, Inc.*, 193 Conn. 558, 479 A.2d 781, 787–88 n. 20 (1984); Notes, *Employers and Employees: A Call for Oklahoma's Adoption of the Whistle–Blower Exception to the Employment-at-Will Doctrine*, 40 Okla.L.Rev. 285, 296 (1987);

tory or decisional law." [1]

Although I concur insofar as the court holds that there should be no contract or tort action for breach of good faith or fair dealing arising from dismissals of at-will employees, I cannot accede to the view that all terminations in breach of public policy should be actionable in *tort.* I would hold that an action for termination in breach of public policy lies in *contract* [2] not tort. Yet, I would recognize a tort action for dismissal that is both contrary to public policy *and* accompanied by the employer's malice, gross negligence or reckless indifference to the employee's rights.

## I

### BREACH OF IMPLIED CONTRACTUAL COVENANT NOT TO DISCHARGE FOR REASONS CONTRAVENING PUBLIC POLICY

I recede from the notion that at-will employees, dismissed in violation of a constitutional, statutory or decisional law, are entitled to tort remedies, which would include punitive damages. Rather, contractual remedies would appear far more appropriate.

cf. *Sooner Broadcasting Company v. Grotkop,* 280 P.2d 457, 461 (Okla.1955).

**1.** According to the majority, the plaintiff asserts two theories for imposing liability on the defendant—one in contract, the other in tort. Both theories are based on the plaintiff's belief that Oklahoma implies a covenant of good faith and fair dealing in at-will employment contracts. Because the court holds that Oklahoma implies no such covenant, any discussion of a tort based on *public policy* is neither necessary nor essential to the disposition of the questions certified for our consideration; the discussion is at best *obiter dictum.*

**2.** Such an action is one for breach of an implied contractual covenant not to discharge for reasons contravening public policy.

**3.** 113 Wis.2d 561, 335 N.W.2d 834, 841 [1983].

**4.** The Wisconsin Supreme Court subsequently refined its view in *Bushko v. Miller Brewing Co.,* 134 Wis.2d 136, 396 N.W.2d 167, 171 [1986]. New Jersey also recognizes a similar, though not identical, view. *Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 417 A.2d 505, 512 [1980] (where the court states: *"An employee who is wrongfully discharged may maintain a cause of*

This view is currently espoused by the Wisconsin Supreme Court, whose opinion in *Brockmeyer v. Dun & Bradstreet* [3] states:

"The most significant distinction in our view between the two causes of action [contract and tort] in wrongful discharge suits is in the damages that may be recovered.... We believe that reinstatement and backpay are the most appropriate remedies *for public policy exception wrongful discharges* since the primary concern in these actions is to make the wronged employee 'whole.' Therefore, we conclude that a contract action is most appropriate for wrongful discharges. *The contract action is essentially predicated on the breach of an implied provision that an employer will not discharge an employee for refusing to perform an act that violates a clear mandate of public policy. Tort actions cannot be maintained."* [4] *[Emphasis added.]*

Although implied convenants [5] are not generally favored in the law,[6] public policy concerns may supply the basis for their recognition without regard to the contracting parties' intentions.[7] Today's decision

*action in contract or tort or both. An action in contract may be predicate on the breach of an implied provision that an employer will not discharge an employee for refusing to perform an act that violates a clear mandate of public policy.... An action in tort may be based on the duty of an employer not to discharge an employee who refused to perform an act that is a violation of a clear mandate of public policy.")* [Emphasis supplied.]

**5.** A *covenant implied-in-law*—i.e., a constructive covenant—is presumed from the relation of the parties and the object to be achieved by the agreement. *Mercury Inv. Co. v. F.W. Woolworth Co.,* Okl., 706 P.2d 523, 529, note 14 [1985].

**6.** *Mercury Inv. Co. v. F.W. Woolworth Co., supra* note 5 at 530.

**7.** *Mercury Inv. Co. v. F.W. Woolworth Co., supra* note 5 at 530, note 14. For other examples where this court implied contractual obligations, see *Dieffenbach v. McIntyre,* 208 Okl. 163, 254 P.2d 346, 348 [1953] (holding that leases contain an implied obligation to place the lessee in actual possession); and *Wright v. Fidelity & Deposit Co. of Maryland,* 176 Okl. 274, 54 P.2d 1084, 1087 [1936] (finding an implied cove-

outlines several public policy considerations including, *inter alia,* potentially unequal bargaining positions and unchecked employer power. These concerns, considered together, supply ample basis for finding a constructive covenant which restricts the at-will masters' ability to discharge their servants for reasons which violate a clear mandate of public policy.

This court has declared that "[a]n action is one *ex contractu* [not *ex delicto* ] when it arises from a breach of a promise implied in law." [8] Employers who breach an implied covenant should hence be liable for damages prescribed by contract law. Exemplary damages, which are improper in *ex contractu* suits, should not be recoverable absent an actionable tort claim.[9]

## II

## EMPLOYEE ACTIONS FOR TORTIOUS BREACH OF CONTRACT

I would not hold that an employer is liable in tort for *all* terminations in breach of public policy. Rather, in my view, a claim may be actionable in tort *only* when an aggrieved employee is able to show far more than mere dismissal in breach of some public policy.

A commercial lender's gross recklessness may constitute a tortious breach of contract.[10] I would extend today this settled norm to govern our jurisprudence in at-will employment breaches. A dismissed employee who proves that his employer acted with malice,[11] gross negligence or reckless indifference should recover *ex delicto.*[12]

---

nant in a construction contract, the court states: " 'A contract consists not only of the agreements which the parties have expressed in words, but also of the obligations that are reasonably implied.' ... 'Every contract contains [an] implied covenant that neither party shall do anything which will destroy or injure [the] other party's right to receive [the] fruits of [his] contract.' ").

**8.** *Uptegraft v. Home Ins. Co.,* Okl., 662 P.2d 681, 684 [1983]; *Anderson v. Copeland,* Okl., 378 P.2d 1006, 1007 [1963]; *Piggee v. Mercy Hospital,* 199 Okl. 411, 186 P.2d 817, 818 [1947]; and *First Nat. Bank v. Matlock,* 99 Okl. 150, 226 P. 328, 331–332 [1924]. In *Anderson, supra* 378 P.2d at 1007, the court, quoting from *Piggee, supra* 186 P.2d at 818, states: " 'Contracts implied by law, or more properly quasi or constructive contracts, are a class of obligations which are imposed or created by law without regard to the assent of the parties bound, on the ground that they are dictated by reason and justice, and *may be enforced by an action ex contractu.*' " [Emphasis added.]
Additionally, actions based on a breach of a contract implied in law are subject to the three-year statute of limitations imposed on certain *ex contractu* actions by 12 O.S.1981 § 95. See *T & S Inv. Co. v. Coury,* Okl., 593 P.2d 503, 505 [1979].

**9.** In Oklahoma a jury may allow exemplary damages only in actions for the breach of an obligation *not* arising from a contract. 23 O.S. Supp.1986 § 9(A). This statutory provision must be strictly construed. 23 O.S.Supp.1986 § 9(B).

**10.** *Rodgers v. Tecumseh Bank,* Okl., 756 P.2d 1223, 1226 [1988]. Actions for tortious breach

of contract—i.e. torts arising out of contractual relationships—lie in the gray area separating pure torts from contract cases. With respect to employment relationships, the conduct of an employer may be so *disgraceful* that exemplary damages are appropriate. See *General Motors Corp. v. Piskor,* 281 Md. 627, 381 A.2d 16, 22–23 [1977] (there, the Maryland court states: "[F]or an alleged wrong [on the part of an employer] to constitute a 'tort arising out of a contractual relationship,' thereby necessitating proof of common law actual malice to permit recovery of punitive damages, we require that there *be a direct nexus between the tortious act and performance or breach of the terms and conditions of the parties' underlying contract.*") [Emphasis added.]

**11.** In Oklahoma "malice" means "gross recklessness." *Wootan v. Shaw,* 205 Okl. 283, 237 P.2d 442, 444 [1951].

**12.** Punitive damages are allowable only where a defendant is culpable of "oppression, fraud, or malice, actual or presumed...." 23 O.S.Supp. 1986 § 9(A). Caselaw construing this language recognizes that malicious or oppressive intent may be inferred from "complete indifference to consequences" or even "gross negligence." *Mitchell v. Ford Motor Credit Co.,* Okl., 688 P.2d 42, 45, note 8 [1984]; and *Wootan v. Shaw, supra* note 11, 237 P.2d at 444. Gross negligence, sufficient for recovery of exemplary damages, is the equivalent of "positive misconduct" or a "conscious indifference to consequences." *Mitchell v. Ford Motor Credit Co., supra* 668 P.2d at 46, note 9; *Dayton Hudson Corp. v. American Mut. Lia. Ins.,* Okl., 621 P.2d 1155, 1161, note 24 [1980]; and *Wootan v. Shaw, supra* note 11, 237 P.2d at 444.

Absent such a showing, employees should be limited to contract remedies only.

SIMMS, Justice, dissenting:

I embrace the majority's initial statement that "we reject the implication of an obligation of good faith and fair dealing in every employment-at-will contract", and that "it is therefore unnecessary for us to address the remaining issues in this matter". However, I am at a loss to understand why the majority circuitously adopts a new cause of action in tort for that which it initially rejects.

The plaintiff's reliance on *Hall v. Farmers insurance Exchange,* Okl., 713 P.2d 1027 (1985), as a basis for her cause of action is misplaced. Crucial to our resolution in *Hall,* was the fact that there was **a written contract** which formed the basis of Hall's recovery.

The defendant in *Hall* exercised his right to terminate an at-will employee. The facts showed that the termination right was exercised as an effort to deprive Hall of future income from insurance policies Hall had sold as an agent for his employer/principal, the defendant. The defendant was liable to Hall for contract damages arising from its wrongful denial of a vested contract right.

The wrongful termination, standing alone, did not give the employee, Hall, a right to recover damages. The amount of and right to damages in *Hall* was determined by the terms of the written contract between the agent and the principal. Hall had vested contractual rights to future commissions which he had already earned, as per the terms of the agency agreement. **Had there been no contract** upon which to measure damages, **there could have been no recovery, even if the termination was wrongful.** There is no written contract in the present dispute.

More recently, we stated that *Hall* "stands for the rule that an agent may recover from the principal when the latter has, in bad faith, deprived him of the fruit of his own labor." See: *Hinson v. Cameron,* Okl., 742 P.2d 549, 554 (1987). In that case, this Court rejected the precise cause of action it now adopts. Today's pronouncement appears to overrule *Hinson* without stating as much.

Like this case, *Hinson* came to us with very few facts that could be used to fashion a meaningful and narrow rule of law. Unlike this case, however, because *Hinson* was an appeal from a grant of summary judgment, we did have certain presumptions of fact upon which to base our holding. In that case, this Court first considered the various "public policy" underpinnings for the alleged tort of bad faith discharge from employment. There, as here, there were no facts suggesting: (a) that the plaintiff had been ordered to do an illegal act; (b) that she was denied an opportunity to exercise any legal right; (c) that she was prevented from performing an important public obligation; or (d), that she was terminated for expressing concerns about her employer's legal or ethical misconduct. Finding none of the public policy exceptions in the facts of that case, we were "compelled to conclude that [Hinson] has no actionable tort claim for wrongful discharge." 742 P.2d at 552, 553.

Similarly, we refused to accept Hinson's suggestion that we recognize an implied covenant of good faith and fair dealing in *employment-at-will contracts.* To the contrary, we determined that, even assuming such a covenant existed, that covenant would "not operate to forbid employment severance except for good cause", and that adoption of a contrary rule "would subject each discharge to judicial incursions into the amorphous concept of bad faith." *Hinson v. Cameron,* supra., at 554. (citation omitted). We quite specifically "decline[d] to impose upon the employer a legal duty not to terminate an at-will employee in bad faith." *Id.*

The questions certified are broadly stated. This is presumably so because the Federal Court had only **allegations** of fact, **as yet unproven,** upon which to frame the questions. Today's pronouncement is, unfortunately, broader still, with no facts to form the foundation for the new rule of law being created.

The majority states that "[w]e reject the implication of an obligation of good faith and fair dealing in every employment-at-will contract", but that "**[a]n employer's termination** of an at-will employee in contravention of a clear mandate of public policy **is a tortious breach of contractual obligations.**" In so holding, the majority has answered question three (3) and partially answered question five (5). Curiously, the majority first states that "[b]ecause we answer the first question in the negative it is unnecessary for us to address the remaining questions." By failing to answer the remaining questions regarding mutuality, (question 2), and mitigation (6), today's pronouncement opens the floodgate to prospective litigation and "subject[s] each discharge to judicial incursions into the amorphous concept of bad faith." *Hinson v. Cameron*, supra. at 554. This neither serves the cause of equity nor the interests of the marketplace.

Since the majority appears to be intractibly committed to "this new cause of action in tort", some guidelines for its application should be plainly stated. The majority states that: "[i]n light of the vague meaning of the term public policy we believe the public policy exception must be tightly circumscribed". This is wholly insufficient as a guide to trial courts. The majority cites *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 652 P.2d 625, 631 (1982), but does not explicitly adopt the limiting language therein as the guidelines to be used in Oklahoma.

I perceive the creation of this new tort of "bad faith" as a transparent attempt to avoid the necessity of overruling *Hinson* while achieving a contrary result. In so doing, the majority fails to distinguish between *Hinson's* refusal to adopt a "bad faith breach of contract" theory, from the "tort" of bad faith, by any means other than the available remedies. I see no public policy being served by subjecting employers to the spectre of punitive damages for termination of an **at-will** employee.

I would prefer to see this Court remain loyal to our existing rules for at-will employment relations. However, if we are to recognize a form of recovery for a terminated at-will employee, we should adopt the more reasonable approach used by the Supreme Court of Arizona:

"We do, however, recognize an implied covenant of good faith and fair dealing in the employment-at-will contract, although that covenant **does not create a duty** for the employer to terminate the employee only for good cause. The covenant **does not protect the employee from a "no cause" termination** because tenure was never a benefit inherent in the at-will agreement."

*Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025, 1040 (1985). (emphasis added).

If it is inevitable that Oklahoma recognize a "public policy" exception to the at-will termination rules previously applied, **the exception should at least be grounded in contract law.** Similarly, the remedies available for the breach of the covenant not to terminate an at-will employee in violation of public policy should be contract remedies.

The majority avoids any mention of mutuality. What of the **employee's** obligations to the employer? If the majority is willing to fashion a broad rule allowing punitive damages for "bad faith termination in violation of public policy", will an employer be permitted to recover punitive damages from an employee if that employee quits in bad faith? Certainly no rule of law which only provides a "bad faith" remedy against one party to a transaction without a similar remedy afforded the other party could ever "serve" the cause of equity. If public policy now provides a remedy against an employer who terminates an at-will employee in bad faith, i.e.: for demanding that the employee act against public policy, then the employer, too, should have the same remedy against an employee who quits when the employee is **prevented** from violating the same public policy.

The majority overrules *Hinson* without specifically stating such. Further, today's pronouncement creates a broad new cause of action which destroys Oklahoma's em-

ployment-at-will doctrine and, at the same time, creates a climate that could foster frivolous and oppressive litigation. This "new" tort is also unnecessary; statutory remedies presently exist for the wrong allegedly committed in this case. (See majority opinion, footnote 4). Here, as in other situations, public policy considerations are best determined by the legislature. For these reasons, I respectfully DISSENT.

Alma Wilson, J., concurred specially and filed opinion.

Hargrave, C.J., and Hodges and Lavender, JJ., dissented.