2000 OK CIV APP 74

**Lester LaRUE, Appellant,**

v.

**ONEOK, INC., d/b/a Oklahoma Natural Gas Company, Appellee.**

No. 93,679.

Court of Civil Appeals of Oklahoma, Division No. 2.

March 14, 2000.

Certiorari Denied May 16, 2000.

Louis P. Falsetti, Brady, Schaulat & Falsetti, Oklahoma City, Oklahoma, for Appellant.

Larry D. Henry, Patrick W. Cipolla, Gable & Gotwals, Tulsa, Oklahoma, for Appellee.

## OPINION

TAYLOR, J.

¶ 1 Plaintiff, Lester LaRue, appeals summary judgment granted to Defendant, Oklahoma Natural Gas, on Plaintiff's claim for wrongful discharge. The issue on appeal is whether Defendant violated clearly articulated public policy in discharging Plaintiff from his employment. Having reviewed the record and applicable law, we answer in the negative and affirm the summary judgment granted to Defendant.

¶ 2 On April 19, 1995, the day of the bombing of the Alfred P. Murrah Building in Oklahoma City, Plaintiff was employed by Defendant as the Safety Coordinator for its Oklahoma City District. Shortly after hearing the explosion at the Murrah Building, Plaintiff proceeded to the scene to investigate the possibility of a natural gas explosion. While at the scene of the explosion, Plaintiff took a series of 44 photographs using Defendant's camera and Defendant's film. The 44 photographs included one of a fireman cradling a deceased infant and photographs of the building shortly after the explosion. Plaintiff took the photographs during his regularly scheduled working hours for Defendant. After he took the photographs, Plaintiff had the film developed at Defendant's expense.

¶ 3 Within days after the bombing, Plaintiff began to enter into rights agreements with third parties to market, sell, and publicly display the firefighter/baby image in photographic form and as a statuette. Plaintiff received approximately $40,000 from the various agreements.

¶ 4 Because Defendant desired any proceeds from the pictures to be contributed to the bombing victims and their families, a dispute arose as to ownership of the photographs. On September 6, 1995, Defendant's representatives met with Plaintiff and advised him that he had two days to agree to acknowledge Defendant's ownership of the photographs, drop any claims which Plaintiff was asserting to the photographs, and pay to Defendant all proceeds which Plaintiff had received from the photographs. Defendant advised Plaintiff that if he did not agree to these terms, his employment would be terminated. After receiving a letter from Plaintiff's attorney dated September 7, 1995, reiterating Plaintiff's intent to retain the photographs and proceeds, Defendant notified Plaintiff, by letter dated September 8, 1995, of its decision to terminate his employment.

¶ 5 Following his termination from employment, Plaintiff filed this action in Oklahoma County District Court, asserting that he was wrongfully discharged in violation of Oklahoma's public policy. Upon Defendant's motion, the case was transferred to the United States District Court for the Western District of Oklahoma. Also pending in the United States District Court was Defendant's copyright infringement action against Plaintiff. The United States District court eventually entered judgments for Defendant in both the copyright infringement action and the wrongful discharge action. Plaintiff appealed the judgments to the Tenth Circuit Court of Appeals, which affirmed the judgment on the copyright infringement claim. However, with regard to the wrongful discharge claim, the Tenth Circuit Court of Appeals remanded the action to the Oklahoma County District Court finding that the wrongful termination claims did not "arise under" the Copyright Act.

¶ 6 Defendant moved for summary judgment in the Oklahoma County District Court action, arguing that (1) Plaintiff had failed to specify an articulated public policy which Defendant had violated in terminating his employment; and (2) Defendant did not wrongfully terminate Plaintiff because it based the termination on Plaintiff's breach of Defen-

dant's conflict-of-interest policy.[1] The district court granted summary judgment to Defendant and Plaintiff appeals.

¶7 Plaintiff and Defendant agree that Plaintiff was an at-will employee. As such, Plaintiff's employment was subject to termination by Defendant without cause at any time. *Burk v. K–Mart*, 1989 OK 22, ¶5, 770 P.2d 24, 26. However, Plaintiff claims that Defendant is liable for wrongful termination under the public-policy exception to the terminable-at-will rule. This exception exposes employers to potential liability "in a narrow class of cases in which the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law." *Id.* at ¶17, 770 P.2d at 28. This exception is "tightly circumscribed" due to "the vague meaning of the term public policy." *Id.* at ¶18, 770 P.2d at 28.

¶8 "[T]he initial determination of public policy is a question of law to be resolved by the court...." *Hayes v. Eateries, Inc.*, 1995 OK 108, ¶19, 905 P.2d 778, 785 (citing *Pearson v. Hope Lumber & Supply Co., Inc.*, 1991 OK 112, ¶4, 820 P.2d 443, 444). Therefore, we must determine "whether a sufficient discernable public policy is implicated by the discharge of an otherwise at-will employee to allow the employee to go forward with the *Burk* tort framework or whether, instead, the case may be resolved as a matter of law against the discharged employee." *Id.*

¶9 The public-policy exception applies "where an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." *Burk*, 1989 OK 22, ¶19, 770 P.2d at 29. Claims that have been recognized under the rubric of the public policy exception are those where employees are dismissed for "(a) refusing to participate in an illegal activity; (b) performing an important public obligation; (c) exercising a legal right or interest; (d) exposing some wrongdoing by the employer; and (e) performing

an act that public policy would encourage or, for refusing to do something that public policy would condemn, when the discharge is coupled with a showing of bad faith, malice or retaliation." *Hinson v. Cameron*, 1987 OK 49, ¶10, 742 P.2d 549, 552–53.

¶10 Thus, under the public-policy exception as recognized in *Burk*, Plaintiff must show that the termination of his employment was "contrary to a *clear* mandate of public policy as *articulated by constitutional, statutory or decisional law*." *Burk*, 1989 OK 22, ¶17, 770 P.2d at 28 (emphasis added). Defendant argues that Plaintiff has failed to identify any public policy that was violated. Plaintiff relies on the third example from *Hinson* and argues that Defendant violated public policy by terminating his employment for "asserting his claim of a legal right to assert ownership." Plaintiff, however, stops at this point—he does not give any source for this public policy.

¶11 It is not enough to expound a public policy; Plaintiff must also show that the public policy is "articulated by constitutional, statutory or decisional law." Plaintiff has failed to do this. He has not cited this court to any authority from which we may derive a public policy that protects an individual from termination from employment for asserting a claim of ownership to property which his employer also claims to own. Thus, we cannot say that termination of Plaintiff's employment was "contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law."

¶12 In the instant case, a controversy over ownership rights to the photographs arose between Plaintiff and Defendant. In analogous cases from other jurisdictions, courts have determined that employers did not violate public policy by terminating employees where controversies arose between the employees and employers. The decisions are based on a balancing of the interests of the employees, the employers, and the public. In *Alexander v. Kay Finlay Jewelers, Inc.*, 208 N.J.Super. 503, 506 A.2d 379, 381 (1986), the court reasoned as follows:

---

**1.** Because we agree with Defendant regarding the first of these arguments, we decline to address the issue of Defendant's conflict-of-interest policy.

While plaintiff had a legal right to sue his employer for monies considered to be due him as salary, there can be no question that the company also had a compelling interest to operate its business without the harassment of suits by employees dissatisfied with their wages or disgruntled because of a reduction in their salary.... It is evident to us that such an adversarial attitude between an employee and employer could be inimical to the operation of the company and that imposing any limitation upon the firing of a discontented employee would severely impact upon the employer's right to discharge those whose conduct could be harmful to the employer's business. Under these circumstances a balancing of the competing interests favors the employer.

The court further concluded that "the dispute giving rise to the termination of plaintiff's employment involved a matter having no significance beyond the private interests of plaintiff and defendant;" thus, the defendant did not violate any clear mandate of public policy. *Id.*

¶ 13 The court in *Deiters v. Home Depot U.S.A., Inc.*, 842 F.Supp. 1023, 1029 (M.D.Tenn.1993), reasoned that "[l]itigation between an employer and employee tends to result in an acrimonious and noncooperative working relationship [and when] such a relationship threatens the effectiveness of an organization, an employer must be free to remedy the situation through termination." The court also implied that a company should not be penalized for "discharging an at-will employee when the employment relationship has completely soured." *Id.* at 1028 (quoting *Kavanagh v. KLM Royal Dutch Airlines,* 566 F.Supp. 242, 244 (N.D.Ill.1983)). Inherent in the employment-at-will relationship is "an understanding that the organization and its managers function more effectively in an atmosphere of trust and cooperation; when this harmony is destroyed, regardless of who is at fault, it is in the interest of all concerned to terminate their relationship." *Id.*

¶ 14 As in *Alexander* and *Deiters,* an adversarial relationship arose between Plaintiff and Defendant. Defendant had a compelling interest in operating its business without the threat of a dispute over the ownership of the photographs. Defendant should not be penalized for remedying the acrimonious situation that had arisen. Furthermore, the dispute between Plaintiff and Defendant was a private dispute that did not impact the public.

¶ 15 Plaintiff has failed to show that Defendant violated a clearly articulated public policy when it terminated his employment. Thus, the summary judgment in favor of Defendant is AFFIRMED.

¶ 16 RAPP, P.J., and STUBBLEFIELD, J. (sitting by designation), concur.