**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 26, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JERRY WALKER,

      Plaintiff - Appellant,

v.

BALCO, INC.,

      Defendant - Appellee.

No. 16-6037
(D.C. No. 5:15-CV-01226-R)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **McKAY**, and **O'BRIEN**, Circuit Judges.
_____

Balco fired Jerry Walker, a long term employee, for making threats of violence it believed endangered its Hispanic employees. The threats, it says, resulted from an altercation between Walker and a Hispanic-American individual in his neighborhood.[1] Walker sees it differently, so differently that he filed

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We make these brief observations only to put the case in perspective. Our review is limited to the facts recited in the complaint. See Note 3, *infra*.

suit.[2] He now appeals from an order dismissing his state-law retaliation claim brought under *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989). It was dismissed because he failed to allege facts sufficient to show his discharge to be contrary to a compelling Oklahoma public policy as articulated by state constitutional, statutory, or decisional law.[3] We see no error.

In a counselled complaint Walker alleged Balco had employed him from June 24, 1980, until he was discharged on June 25, 2015. His supervisor at the time of the discharge was Tom Shupe. Beyond that, as the district judge noted, "[t]he facts underlying [his] claims are somewhat difficult to construe." Aplt. App. at 4. We, like the district judge, will do our best.

---

[2] The complaint was filed in an Oklahoma state trial court. Balco removed the case to federal court.

[3] The decretal portion of the court's "Order" simply grants the motion to dismiss without specifying whether it was based on Rule 12(b)(6) or whether it was with or without prejudice. The Judgment is equally uninformative. But language in the Order indicates the dismissal to be for failure to state a claim under Rule 12(b)(6). *See* Aplt. App. at 6 ("The Court finds that as a matter of law, accepting Plaintiff's allegations as true, that there is no compelling Oklahoma public policy to support his *Burk* claim.").

Since neither the Order nor the Judgment specified the type of dismissal, we presume it to be *with* prejudice. *See, e.g.*, *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1299 (10th Cir. 2014) ("Dismissals for failure to state a claim are presumptively with prejudice because they fully dispose of the case.").

Walker, who was represented by counsel, did not seek leave to amend the complaint. Accordingly, we must conclude counsel was unable to produce more factually robust pleadings or considered the complaint to be sufficient and the district judge's assessment of it incorrect. In any event our review is constrained by the facts recited in the complaint and guided by Oklahoma law.

In September 2011, approximately four years before he was discharged, Walker allegedly "disclosed misconduct by Shupe to Ron Knuk, Shupe's supervisor." Aplee. Supp. App. at 7. The alleged misconduct involved Shupe "blatantly misstat[ing]" the effect of "Oklahoma City shop closings [on] hourly wage employees as compared to salaried employees."[4] *Id.*

According to the complaint, after Walker's disclosure of Shupe's misstatement to Knuk, Shupe "engaged in further misconduct, including harassment and sexual misconduct, of which [Walker] was aware." *Id.* The complaint revealed neither the alleged victim or the nature of the misconduct and it did not claim that Walker reported the misconduct. It only alleged Shupe to have become "vulnerable to further whistleblowing" because of the alleged misconduct. *Id.* Then, it said, Shupe "engaged in a pattern of harassment of [Walker] in an effort to drive [Walker] from . . . employment" with Balco. *Id.* No specific acts of harassment against Walker, other than his eventual termination in 2015, were alleged. But the complaint went on to state additional "facts" and a pattern of harassment claim against Shupe.

According to the complaint, Knuk left his employment with Balco sometime in 2015. Before Knuk left, Walker claims to have told him about another incident

---

[4] Apparently, the Balco shop in Oklahoma City endured a temporarily closure. According to the complaint Walker and Shupe discussed the impact the closure would have on employees during which Shupe falsely told him salaried employees would lose pay during the temporary closure in the same manner as hourly employees. That, he contends, was a misstatement of the Fair Labor Standards Act ("FLSA") and, in fact, the pay of salaried (exempt) employees was undiminished during the closure, unlike that of hourly employees.

3

involving Shupe; one that had occurred years earlier–in October 2011. That incident, he says, resulted when Walker's co-worker, Steve Cooper, and Knuk were discussing Shupe's closing of Balco's Oklahoma City shop. As a result of Cooper's statements, Shupe allegedly "harassed, cursed, and threatened the life of [Balco's] Oklahoma City employees Larry Cooper and Gary Cooper," who were Steve Cooper's brothers. *Id.*

Walker claims to have been "discharged by letter signed by Shupe, in retaliation for [Walker's] whistleblowing" to Knuk, who by then was no longer with Balco. *Id.* at 8. Walker alleges Balco's "stated reasons for the discharge were based upon distortion and subterfuge" and his "discharge was against the public policy of Oklahoma." *Id.*

We review de novo the district court's dismissal of Walker's complaint for failure to state a claim. *Mocek v. City of Albuquerque*, 813 F.3d 912, 921 (10th Cir. 2015). "To survive a motion to dismiss, a complaint must 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted).

"Oklahoma law recognizes a public policy exception to the otherwise virtually unfettered ability of an employer to terminate an at-will employee." *Bastible v. Weyerhaeuser Co.*, 437 F.3d 999, 1007 (10th Cir. 2006). A tort remedy is available "where an employee is discharged for refusing to act in violation of an established

4

and well-defined public policy or for performing an act consistent with a clear and compelling public policy." *Burk*, 770 P.2d at 29. But this "unique tort" applies "to only a narrow class of cases and must be tightly circumscribed." *Clinton v. State ex rel. Logan Cty. Election Bd.*, 29 P.3d 543, 545 (Okla. 2001), *overruling on other grounds recognized by Shirazi v. Childtime Learning Ctr., Inc.*, 204 P.3d 75, 78 n.13 (Okla. 2009); *see also Burk*, 770 P.2d at 28-29.

In argument to this court (his brief) Walker claims he was fired in violation of "the public policy of an employee reporting a crime of a co-employee, said reporting being a vindication of the reporting employee's own legal right or interest of protection of himself from death threat." Aplt. Opening Br. at 17. To give rise to a *Burk* claim, the employee's report of a co-employee's crime must seek to vindicate the employee's own legal rights or those of the general public. *See Hayes v. Eateries, Inc.*, 905 P.2d 778, 786 (Okla. 1995). Walker's complaint does not allege Shupe threatened *Walker* with death in the 2011 incident, and he has not shown his report to have been for vindication of any rights of the general public.

Instead, Walker contends he sought to vindicate his own legal rights by reporting Shupe's criminal threats against the Coopers. As the argument goes, the threats against the Coopers disturbed him, thereby violating Okla. Stat. tit. 21, § 1362, which prohibits making a disturbance by loud or unusual noise or by abusive, violent, obscene, profane, or threatening language. Section 1362 reads as follows:

> If any person shall willfully or maliciously disturb, either by day or night, the peace and quiet of any city of the first class, town, village, neighborhood, family or person by loud or unusual noise, or by abusive,

violent, obscene or profane language, whether addressed to the party so disturbed or some other person, or by threatening to kill, do bodily harm or injury, destroy property, fight, or by quarreling or challenging to fight, or fighting, or shooting off any firearms, or brandishing the same, or by running any horse at unusual speed along any street, alley, highway or public road, he shall be deemed guilty of a misdemeanor . . . .

Even assuming Walker qualifies under this statute as a victim of the offense—a person "disturbed" by Shupe's threatening language, even though not himself the object of the threat—we do not see how his long delayed report of Shupe's behavior to Balco management can form the predicate of a *Burk* claim, under this statute or any other Oklahoma law. Walker points to no Oklahoma authority, either statutory or decisional, reflecting a clear and compelling Oklahoma public policy that would protect a report of threatening conduct amounting to a misdemeanor breach of the peace, made four years after the events in question. And we have not located any such authority.

Against the backdrop of the earlier threat against the Coopers, Walker also argues "subsequent harassment of himself and other employees truly caused [him] to fear for his life upon Knuk's leaving the company." Aplt. Opening Br. at 16. He even asserts he told Knuk how Shupe's actions had caused him to fear for his life. *See, e.g.*, Aplt. Reply Br. at 1. But he breathed not a word of this in his complaint. Instead, the complaint described a "pattern of harassment" designed to "drive Plaintiff from the Defendant's employment," not to make him fear for his life. Aplee. Supp. App. at 7. And the only whistleblowing he alleged before Knuk left Balco involved the threats to the Coopers, not a death threat against him. More

6

pointedly, he has not explained how the vague, undifferentiated, and unspecified harassment described in his complaint violated any Oklahoma public policy as articulated in that state's constitutional, statutory, or decisional law.

Walker's complaint fails to state facts plausibly giving rise to a *Burk* claim. We affirm.

Entered for the Court

Terrence L. O'Brien
Circuit Judge